# UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| STONEBROOK JEWELRY, LLC, dba REVOLUTION JEWELRY, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>REVOLUTION JEWELRY WORKS, INC., a Colorado corporation; and JENNIFER JEAN FARNES, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION<br><br>Case No. 2:22-cv-328-HCN-JCB<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Stonebrook Jewelry, LLC sues Defendants Revolution Jewelry Works, Inc., and Jennifer Jean Farnes, asserting federal and state claims for trademark infringement, unfair competition, and false designation of origin. Defendants move to dismiss the action for lack of personal jurisdiction. The court grants the motion.

## I.

Stonebrook Jewelry is a Utah company that markets and sells jewelry and does business as "Revolution Jewelry." Dkt. No. 5 at 1. Revolution Jewelry Works is a Colorado corporation with its principal place of business in Colorado. *See id.* ¶ 2. Jennifer Farnes lives in Colorado and is the founder and owner of Revolution Jewelry Works. *See id.* ¶ 3; Dkt. No. 13. ¶ 3.

Revolution Jewelry Works maintains a website that is accessible in all 50 states. *See* Dkt. No. 13 ¶¶ 6–7. Although potential customers may identify "jewelry they would like to purchase on the Revolution website, place it in their shopping cart, and submit their order request to Revolution," they cannot consummate the transaction on the website alone and must finalize the purchase over the phone with a Revolution Jewelry Works representative. *Id.* ¶ 10. Stonebrook alleges that in January 2022, Revolution Jewelry Works modified this website "in an effort to

look more like Plaintiff's website and thus cause confusion in the marketplace." Dkt. No. 5 ¶ 34. There is no evidence that any Utah resident has used Revolution Jewelry Works' website to initiate the process of placing an order. Indeed, there is evidence of only one sale that Revolution Jewelry Works has made to a Utah resident; that individual "reached out to Revolution via email" to place the order. Dkt. No. 13 ¶¶ 12, 15–16.

Revolution Jewelry Works also sells jewelry through Facebook and "other internet sites." Dkt. No. 22-9 at 10 ¶ 25. But "[m]uch of Revolution's business is conducted out of its only physical storefront," which is located in Colorado. Dkt. No. 13 ¶ 13. Although Revolution Jewelry Works promotes its products and services mainly through "word-of-mouth referrals," it also "advertises in Colorado using television, movie theaters, magazines, radio, and newspapers." *Id.* ¶¶ 14, 22. None of its promotional efforts or materials target Utah residents. *See id.* ¶¶ 17–18, 21–22.

Ms. Farnes has written several articles for, and been featured in, a trade publication called *InStore Magazine*, which is distributed to jewelry stores throughout the country, including in Utah. *See id.* ¶¶ 23–24. But neither Ms. Farnes nor Revolution Jewelry Works has any control over where *InStore Magazine* is distributed. *See id.* ¶ 24.

Revolution Jewelry Works has an arrangement with a Utah company called Element Rings Company, which allows Element to sell its jewelry in Revolution Jewelry Works' Colorado store. *See id.* ¶¶ 25–26; Dkt. No. 21 at 5 ¶ 17. Element's jewelry is displayed separately from Revolution Jewelry Works' products, however, and it is sold under its own brand name. *See* Dkt. No. 13. ¶¶ 27, 29.

## II.

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) (cleaned up). If there "has

been no evidentiary hearing" and the court decides a motion to dismiss for lack of personal jurisdiction "on the basis of affidavits and other written material," the plaintiff may satisfy its burden by making "a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

"The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In deciding whether the plaintiff has met its *prima facie* burden, the court must "accept as true the well-pleaded (that is, plausible, non-conclusory, and non-speculative) facts alleged in the complaint unless they are controverted by sworn statements," *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020) (cleaned up), and "resolve in the plaintiff's favor any factual disputes arising from the complaint and the parties' affidavits," *Hood v. American Auto Care, LLC*, 21 F.4th 1216, 1220 (10th Cir. 2021).

"A federal court may not exercise personal jurisdiction over an out-of-state defendant unless (1) an applicable statute authorizes service of process on that defendant and (2) the exercise of statutory jurisdiction comports with constitutional due process." *Fluent*, 955 F.3d at 839. Stonebrook does not contend that the federal statutes under which it sues authorize service of process on Revolution Jewelry Works or Ms. Farnes. The applicable statute in this case is thus Utah's long-arm statute, which authorizes Utah courts "to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code § 78B-3-201(3). It follows that the court need determine only whether jurisdiction over Defendants would comport with constitutional due process. *See Fluent*, 955 F.3d at 839.

The Due Process Clause of the Fourteenth Amendment protects an out-of-state defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (cleaned up). The court may thus exercise personal jurisdiction over Defendants only if their contacts with the State of Utah are significant enough that they "should reasonably anticipate being haled into court" in this State. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### III.

Although "[p]ersonal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction," *Fluent*, 955 F.3d at 840, Stonebrook now invokes only this court's specific jurisdiction. "Specific jurisdiction is proper if (1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'" *Id.* at 840 (quoting *Burger King*, 471 U.S. at 472).

The purposeful direction requirement is met "where the defendant deliberately has engaged in significant activities within a State," and thereby "manifestly has availed himself of the privilege of conducting business there." *Burger King*, 471 U.S. at 475–76 (cleaned up). "Purposeful direction is a product of both the quantity and quality of a defendant's contacts with the forum." *Fluent*, 955 F.3d at 840. What matters, though, are "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The purposeful direction "requirement ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, the unilateral activity of another party or a third person, or the mere foreseeability that its actions may cause injury in that jurisdiction." *Fluent*, 955 F.3d at 840–841 (cleaned up).

The second requirement is that the plaintiff's claims "arise out of or relate to activities that the defendant purposefully directed at residents of the forum." *Hood*, 21 F.4th at 1222 (cleaned up). In *Ford Motor Co. v. Montana Eighth Judicial District Court*, the Supreme Court clarified that this standard "contemplates that some relationships will support jurisdiction without a causal showing." 141 S. Ct. 1017, 1026 (2021).

## A.

Because "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984), the court considers first whether it has personal jurisdiction over Revolution Jewelry Works.

## 1.

Stonebrook argues that the court may exercise personal jurisdiction over Revolution Jewelry Works because it maintains a commercial website that "allows [it] to sell its products to customers in Utah." Dkt. No. 21 at 14–16. Some district courts, including some judges in this District, have held that personal jurisdiction is proper under the "sliding scale" framework established in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D.Pa.1997), if a defendant's website is commercial in nature and available to forum residents "regardless of whether sales have actually occurred within the forum." *Del Sol, L.C. v. Caribongo, L.L.C.*, 2012 WL 530093, at *4 (D. Utah Feb. 17, 2012) (collecting cases). And some judges in this District have similarly held that, under the "stream of commerce" theory, a defendant's commercial website establishes purposeful direction if it allows residents of the forum State to order products to the forum State by selecting that State from a drop-down menu, even if the defendant has made no sales, or only one actual sale, to a forum State resident. *See Zing Bros., LLC v. Bevstar, LLC*, 2011 WL 4901321, at *2–3 (D. Utah Oct. 14, 2011); *Neck*

*Hammock, Inc. v. Danezen.com*, 2020 WL 9601834, at *1 (D. Utah May 5, 2020); *Lovesac Co.*

*v. www.lovessac.com*, 2022 WL 504192, at *2 (D. Utah Feb. 18, 2022).

 The court is not persuaded that these decisions are consistent with Tenth Circuit and

Supreme Court precedent. First, the court in *Del Sol* concluded that the *Zippo* framework had

been adopted by the Tenth Circuit. *See* 2012 WL 530093, at *3. But in *Shrader v. Biddinger*, the

Tenth Circuit clarified that it "has not taken a definitive position on the *Zippo* sliding-scale test"

and that other circuits "tend to employ it more as a heuristic adjunct to, rather than a substitute

for, traditional jurisdictional analysis." 633 F.3d 1235, 1242 n.5 (10th Cir. 2011).

 The Tenth Circuit instead cited approvingly the Fourth Circuit's "test for specific

jurisdiction arising out of internet activity." *Id.* at 1240. Under that test, a court may, "consistent

with due process," exercise personal jurisdiction over an out-of-state person who "(1) *directs*

*electronic activity into the State*, (2) *with the manifested intent of engaging in business or other*

*interactions within the State*," so long as "(3) that activity creates, in a person within the State, a

potential cause of action cognizable in the State's courts." *Id.* (quoting *ALS Scan, Inc. v. Digital*

*Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)).

 The court in *Shrader* further explained that "[t]he maintenance of a web site does not in

and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the

site, simply because it can be accessed by residents of the forum state." *Id.* at 1241. To be sure,

the court in *Shrader* addressed an internet forum rather than a commercial website. *See id.* at

1244–45. But the Fourth Circuit test, which requires that the defendant direct electronic activity

into the forum State with the intent of "*engaging in business* or other interactions" plainly

applies to commercial and noncommercial websites alike. It is thus clear under *Shrader* that out-

of-state defendants cannot be haled into court in this State merely because they operate commercial websites that are accessible by Utah residents.

Second, the rule in *Zing Brothers* is difficult to reconcile with the Supreme Court's decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011), at least as that decision has been interpreted by the Tenth Circuit. In *Fluent*, the Tenth Circuit explained that in *J. McIntyre*, "six Justices emphasized that personal jurisdiction did not exist simply because of a defendant's awareness that its products could, through the stream of commerce, end up in the forum State." 955 F.3d at 843. The Tenth Circuit went on to quote Justice Breyer's concurring observation that "the Court's precedents had never found that 'a single isolated sale' into the forum sufficed for personal jurisdiction, 'even if that defendant placed his goods in the stream of commerce, fully aware (and hoping) that such a sale would take place.'" *Id.* (quoting *J. McIntyre Machinery*, 564 U.S. at 888–89 (Breyer, J., concurring)) (cleaned up).

This court accordingly declines to apply the rules regarding commercial websites stated in *Del Sol* and *Zing Brothers* and will instead apply traditional jurisdictional principles and the internet-specific principles approved in *Shrader* to the facts of this case. Here, there is no dispute that Revolution Jewelry Works' website is accessible in Utah (and every other State). But although residents of Utah can use the website to start the process of ordering jewelry, there is no evidence that anyone from Utah has actually done so. Indeed, there is evidence of only one sale to a Utah resident; in that instance, the buyer reached out to Revolution Jewelry Works and placed an order by email. *See* Dkt. No. 13 ¶¶ 12, 15–16. Nor are there any uncontradicted allegations or evidence that Revolution Jewelry Works deliberately directed any activities to the State of Utah for the purpose of promoting or selling its products to Utah residents or increasing visits by Utah residents to its website, Facebook page, or other internet sites.

To the contrary, the only evidence before the court is a declaration that Revolution Jewelry Works directs its promotional activities only to Colorado and that it has never purposefully directed sales or even promotional activities to Utah. *See id.* ¶¶ 17–18, 21–23. Even if Revolution Jewelry Works is aware of the possibility that its products will be sold to Utahans through its website, moreover—indeed, even if it *hopes* for that result—the fact that a customer *might* select Utah from its drop-down menu does not constitute the requisite "particular focus by the defendant on the forum State to satisfy the purposeful-direction requirement." *Fluent*, 955 F.3d at 843; *see also J. McIntyre Machinery*, 564 U.S. at 891 (Breyer, J., concurring).

The court thus concludes that there is insufficient evidence showing that Revolution Jewelry Works deliberately directed internet activities to Utah with the intent of engaging in business or other interactions in Utah and accordingly rejects the argument that the commercial nature of the website or the ability to select Utah (or any other State) from a dropdown menu when initiating an order on that website—whether considered individually or together—suffices to establish purposeful direction.

## 2.

Stonebrook also appears to argue that the alleged infringement of its trademarks and the alleged copying of its website to create confusion demonstrate purposeful direction by Revolution Jewelry Works because "if Stonebrook's trademark has been infringed as alleged, the harm to Stonebrook will have been suffered in Utah, where it resides" and it was therefore "foreseeable . . . that Defendants would be haled into a Utah court" to answer for this harm. Dkt. No. 21 at 12–13, 18.

Other courts have held that under the *Calder* "effects" test, "trademark infringement *plus 'something more'* can establish jurisdiction." *FITn40, LLC v. Glabia Nutritionals (Ireland) Ltd.*, 2022 WL 79910, at *7 (D. Utah Jan. 7, 2022) (emphasis added; citing *Systems Designs, Inc. v.*

*New Customware Co., Inc.*, 248 F. Supp. 2d 1093, 1099 (D. Utah 2003), which in turn cites cases from the Seventh and Ninth Circuits). And the Tenth Circuit has explained that under *Calder*, a plaintiff must show "not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state*." *Dundikov v. Chalk & Vermillion Fine Arts*, 514 F.3d 1063, 1077–78 (10th Cir. 2008). And in *Shrader,* the Tenth Circuit further clarified that "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." 633 F.3d 1235 (cleaned up). Rather, the forum State "*must be the focal point*" of the defendant's actions. *Id.* Under these precedents, a showing that the defendant *specifically intended* to cause harm *in the forum State* might suffice.

Here, for the same reasons already discussed, Stonebrook has failed to provide evidence or uncontradicted allegations sufficient to show that Revolution Jewelry Works "expressly aimed" its allegedly harmful activities at Utah or intended to make Utah the "focal point" of its actions. For example, there are no uncontradicted allegations or evidence that Revolution Jewelry Works sent promotional materials using infringing marks to Utah residents or that any Utah resident used its website to order jewelry from Revolution Jewelry Works. Nor are there uncontradicted allegations or evidence that Revolution Jewelry Works took any actions with the specific intent of causing injury to Stonebrook *in Utah*. The court therefore concludes that it cannot exercise personal jurisdiction over Revolution Jewelry Works merely because Stonebrook suffered the alleged harm in Utah and such harm may have been foreseeable to Revolution Jewelry Works.

### 3.

Finally, Stonebrook argues that Revolution Jewelry Works' other business activities—namely, its sale of jewelry to a Utah resident by email, its business relationship with Element,

and Ms. Farnes' contributions to *Instore Magazine*—are "sufficient to establish personal jurisdiction over Defendants in Utah." Dkt. No. 21 at 13–14. The court disagrees.

First, one sale by email to a Utah resident is precisely the sort of "random, fortuitous, or attenuated" contact with the forum State that cannot subject Revolution Jewelry Works to personal jurisdiction, especially given the lack of uncontradicted allegations or evidence that Stonebrook's claims arise out of or relate to that sale. And Stonebrook does not cite—nor is the court aware—of any Tenth Circuit or Supreme Court precedent holding that a "'single isolated sale' into the forum suffice[s] for personal jurisdiction." *Fluent*, 955 F.3d at 842 (quoting *J. McIntyre Machinery*, 564 U.S. at 888–89 (Breyer, J., concurring)).

Second, Revolution Jewelry Works' relationship with Element consists merely of Revolution Jewelry Works' allowing Element to display and sell some of its jewelry in Revolution Jewelry Works' Colorado store. There is no evidence that Revolution Jewelry Works formed this arrangement with Element to promote or sell its products to Utah residents or to create confusion between Revolution Jewelry Works' products and Stonebrook's.[1] Indeed, it appears that the relationship's only connection with Utah is that Element happens to be a Utah company. But because the court's "minimum contacts analysis" must be focused on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons" affiliated with the forum State, *Walden*, 571 U.S. at 285 (cleaned up), Revolution Jewelry

---

[1] To be sure, counsel for Stonebrook asserted for the first time at the hearing on the motion that Element is a direct competitor of Stonebrook and that Revolution Jewelry Works' website displays Element's rings, which are similar to those made by Stonebrook and thus creates confusion. But no such allegations were made in the complaint or in Stonebrook's opposition brief. In all events, these new assertions appear to be contradicted by Ms. Farnes' sworn statements that Revolution Jewelry Works allows Element to "display a sampling of [its] jewelry in Revolution's Colorado storefront" in a "separate display case" and that Element's "jewelry is sold under [its] brand" and "is not marketed as or sold as Revolution Jewelry, and it is not sold under Revolution's brand or marks." Dkt. No. 13 ¶¶ 26–27, 29.

Works' relationship with a Utah business does not, by itself, suffice to establish personal jurisdiction, *see Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 268 (2017).

Finally, the contributions Ms. Farnes made to *Instore Magazine* are not activities that Revolution purposefully directed at Utah. Neither Ms. Farnes nor Revolution directed that the publication be distributed to Utah stores; indeed, they had no control over where it was distributed. *See* Dkt. No. 13 ¶¶ 23–24. The court cannot exercise personal jurisdiction over Defendants based on the "unilateral activity" of *Instore Magazine. Fluent*, 955 F.3d at 841. Even accepting as true Stonebrook's assertions that Defendants were "likely aware of the scope of the publication's distribution and agreed to contribute anyway," Dkt. No. 21 at 13, "[g]eneral knowledge that a message will have a broad circulation does not suffice" to establish purposeful direction, *Fluent*, 955 F.3d at 846. Rather, Stonebrook must provide uncontradicted allegations or evidence showing that Revolution Jewelry Works "deliberately directed its message at an audience in [Utah]" or intended the effects of the message to occur "primarily or particularly in [Utah]." *Shrader*, 633 F.3d at 1241. Stonebrook has not done so.

The court thus concludes that Revolution Jewelry Works' other business activities do not suffice to show that it deliberately directed significant activities at the state of Utah.

**4.**

Not only does *none* of these contacts *individually* suffice to establish purposeful direction, the court also concludes that *all* of these contacts *in combination* do not suffice. Simply put, this is a case where multiple fortuitous or incidental contacts do not add up to purposeful direction.

Because Stonebrook has failed adequately to allege or show that Revolution Jewelry Works deliberately engaged in significant activities in Utah to avail itself of the privilege of

conducting business here, the court concludes that Stonebrook has failed to meet its burden of showing that the court may exercise personal jurisdiction over Revolution Jewelry Works.

**B.**

Stonebrook relies on the exact same activities and contacts to argue that the court may exercise jurisdiction over Ms. Farnes because she directed these activities as the owner and operator of Revolution Jewelry Works. *See* Dkt. No. 21 at 7, 19–20. Given the court's conclusion that these activities and contacts do not suffice to establish personal jurisdiction over Revolution Jewelry Works, it follows that the court also lacks personal jurisdiction over Ms. Farnes.

\*　　　\*　　　\*

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED**.[2]

**IT IS SO ORDERED.**

Dated this 15th day of August, 2023.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge

---

[2] In its response to the motion to dismiss, Stonebrook requests the court to "allow the parties to conduct discovery relevant to personal jurisdiction" if it "finds there is inadequate evidence to support jurisdiction." Dkt. No. 21 at 23. The court has "broad discretion to manage . . . jurisdictional discovery." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 104 (10th Cir. 2012). But under the court's local rules, a party cannot make a motion in a response or a reply. *See* DUCivR 7-1(a)(3). Unlike the passing request made in Stonebrook's brief, a formal motion would have provided Revolution Jewelry Works and Ms. Farnes a meaningful opportunity to be heard in opposition and enabled the court to determine whether jurisdictional discovery is warranted, and, if it is, to define the scope of such discovery. Absent such a motion, the court will not grant Stonebrook's request for jurisdictional discovery.